# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JONATHAN GABRIEL, | : | Case No. 3:17-cv-00004 |
| Plaintiff, | : | Magistrate Judge Sharon L. Ovington |
| | : | (By full consent of the parties) |
| vs. | : | |
| NANCY A. BERRYHILL, Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

## DECISION AND ENTRY

### I. Introduction

Plaintiff Jonathan Gabriel applied for Supplemental Security Income in mid-April 2013. Administrative Law Judge Eric Anschuetz determined that Plaintiff's health problems did not constitute a "disability" as defined by the Social Security Act. He therefore denied Plaintiff's application.

Plaintiff brings the present case challenging ALJ Anschuetz's decision. He advances eight assignments of error, including that the ALJ erred in weighing the opinions of Dr. Fitz, Plaintiff's treating psychiatrist, and the record-reviewers' opinions. Plaintiff also contends that the ALJ mischaracterized his caseworker's opinions. These, together with the additional errors Plaintiff describes, provide a basis for a judicial award of benefits, according to Plaintiff.

The Commissioner concludes that an Order affirming ALJ Anschuetz's decision is warranted because there is no error his decision and substantial evidence supports his findings.

## II. Background

Plaintiff was younger than age 50 on the date he protectively filed his application for Supplemental Security Income. This placed him in the category of a "younger person" under social security law. 20 C.F.R. § 416.963(c). He has a high school education.

Plaintiff testified during a hearing before ALJ Anschuetz that he last worked in 1989 when he walked away due to a very bad confrontation with a manager that "nearly became violent." (Doc. #6, *PageID* #75). After he tried to work other jobs, he realized that the incident in 1989 was not a one-time thing. He explained: "I have panic attacks and social phobia, and I become agitated and aggravated, and then I become angry, and if I don't remove myself from the situation, I know that there is a possibility that I could be violent, and so I won't put myself in that situation…." *Id*. None of the jobs he has tried lasted 30 days. He has not had a job since 2000 except for assisting a disabled elderly man he considered to be his father. *Id*. at 77-79. This man financially supported Plaintiff until he died in 2009.

Plaintiff identified his worst impairments as bipolar disorder, "social phobia and the quakes…," and obsessive-compulsive disorder. *Id*. at 89. He has episodes of "uncontrollable crying for absolutely no reason when there's absolutely nothing wrong…." *Id*.

Plaintiff tries to go to the grocery store once or twice a month but has difficulty making himself go there. He goes at times when he feels he can get there and back without having a problem. He sometimes goes at 3:00 or 4:00 a.m. and never goes on a Friday, Saturday, Sunday, or holiday. *Id*. at 91. Once in a while, he goes to a store that is owned by friends. He is never away from his house longer than an hour because he will start to get symptoms after an hour passes. He leaves his home about once a week.

Plaintiff waits to get his mail until it gets dark outside. He explained: "I peek out the curtain and make sure that I can't see anybody in the alley across the street or that I can't see anybody, and then I go out and unlock the mailbox and get the mail, and then I go back in the house, and I lock the door and then I check it, and then I go in, but generally if there's somebody outside, I won't go and get my mail…." *Id*. at 97.

Plaintiff used to collect coins and stamps as hobbies. He sold his collections to pay bills after the elderly man he assisted died.

During the ALJ's hearing, another witness, Ann Howard, testified. She is a licensed social worker and has been working with Plaintiff since March 2013. Howard works as "the adult care specialist for case management services,… more of a social work role." *Id*. at 102. She added, "my main goal being to help him remain stable in the community, basically." *Id*. She is not a psychologist or psychotherapist. *Id*.

Howard sees Plaintiff various times, sometimes month, other times multiple times a month. Plaintiff contacts her by phone more often than seeing her face-to-face because he has difficulty leaving home. *Id*. at 103-04. Howard further testified: "due to his level of mental illness symptoms…, he finds it difficult to participate in anything in the

community other than what he absolutely has to do to survive, meeting basic needs. That's really the only thing that he typically leaves the house for, is to meet, you know, basic needs." *Id*. at 1034. Howard reported that Plaintiff has some difficulty with paranoia and has difficulty with obsessive thinking, extreme worry and anxiety. *Id*. at 106. He does not believe in committing suicide. Nevertheless suicidal thoughts plague him on a regular basis. Howard noted that when she has seen Plaintiff in her office, "his anxiety symptoms are very visible. His tremors and that sort of thing …." *Id*. at 107.

When the ALJ asked Howard why she believed Plaintiff could not work, she explained:

> I believe that his mental health symptoms are such that they would prevent him from being any type of reliable worker because he would have trouble getting out of bed, he would have trouble doing the—even the basic activities to get ready for work, probably because of anxiety. I think…, if he was able to get to work, I think he would encounter difficulty with tasks because of some of the obsessive problems that he has with his brain, functioning. Being able to even complete tasks.

*Id*. at 110.

Turning to the medical evidence that the ALJ considered, the record contains treatment records and opinions provided by Plaintiff's psychiatrist, Stephanie C. Fitz, M.D. In April 2013, Dr. Fitz responded to a mental health questionnaire from the Ohio Department of Job and Family Services as part of Plaintiff's application for state welfare benefits. *Id*. at 581. Dr. Fitz indicated that Plaintiff had mental-health limitations in a number of specific vocational areas. *Id*. These included, but were not limited to his ability to maintain regular attendance, work in proximity to others, avoid exhibiting

4

behavioral extremes, accept instructions, and respond appropriately to criticism. *Id*. Dr. Fitz also indicated that Plaintiff was "unemployable" and his mental-work limitations were expected to last 12 months or more.

In June 2013, Dr. Fitz responded to interrogatories from the state disability-determination agency. *Id*. at 333-35. She noted that Plaintiff's mood and affect were often dysphoric and anxious. She explained that his severe anxiety manifested during appointments as tremulous speech and constant worry. Dr. Fitz noted that Plaintiff suffers from poor social adaption and fear when around strangers. Dr. Fitz further noted that Plaintiff "would likely become irritable, labile, and withdrawn" in response to the pressures of work, even that involving only simple, routine, and/or repetitive tasks. *Id*. at 334.

Ann Howard answered interrogatories from the state disability-determination agency. *Id*. at 313-14. She reported that Plaintiff experiences "panic attacks due to social anxiety disorder. These cause shortness of breath, irritability, sweating. [He] becomes at risk for severe panic attacks when in any public situation." *Id*. at 313. He will not leave his house if he sees his neighbors outside.

In July 2013, psychologist Katherine Fernandez, Psy.D., reviewed Plaintiff's medical records. (Tr. 129-33). She opined that Plaintiff was capable working in a static work environment without production quotas or a fast pace. *Id*. at 132. She also opined that Plaintiff would need to work independently with minimal to no collaboration with others and should not be required to work in groups or around crowds. And, according to Dr. Fernandez, Plaintiff "would likely become irritable and [withdraw] when exposed to

5

workplace stress." *Id*. at 133.  In December 2013, psychologist Tonnie Hoyle, Psy.D., reviewed the record and reached the same conclusions as Dr. Fernandez. *Id*. at 146-48.

In November 2013, Dr. Fitz answered additional interrogatories. *Id*. at 386-89. She listed Plaintiff's diagnoses as bipolar disorder and social phobia.  She noted that Plaintiff does not leave his home except for appointments, has limited coping skills, and has a "poor" prognosis. *Id*. at 387.  As to work relevant limitations, Dr. Fitz opined that Plaintiff experiences marked in many areas of work functions, including, for example, marked difficulties concentration, persistence, or pace; marked limitation in his a ability to sustain and ordinary work day without special supervision; and marked limitation in his ability to maintain attendance and be punctual within ordinary tolerance; and marked limitation ins his ability to work in proximity to others without being distracted by them. *Id*. at 388-89.  She also opined that Plaintiff's mental impairments would cause him to be absent from work more than three times per month. *Id*. at 388.

Over the years, Dr. Fitz also wrote letters concerning her diagnoses and treatment of Plaintiff.  She further provided her opinions about Plaintiff's work abilities.  She wrote a general letter in December 2008 noting that Plaintiff "suffers from psychiatric illness (Bipolar Disorder and Social Phobia) and is "unable to work." *Id*. at 315.  Similarly, in February 2010, she signed a form endorsing that Plaintiff was "permanently and totally disabled" for the purposes of the homestead exemption under Ohio law. *Id*. at 317.  Dr. Fitz authored a letter on November 5, 2012 opining that Plaintiff had been unable to maintain employment and will not "recover sufficiently to be able to work in the foreseeable future." *Id*. at 330.  She wrote a very similar letter in November 2013. *Id*. at

582. The psychiatrist additionally wrote a letter to the Department of Job and Family Services in February 2015 asking that Plaintiff be excused from in-person meeting requirements because he is emotionally unable to attend public meetings and his anxiety often keeps him from leaving his home. She further reported, "He is seen by me only 2 times yearly due to his anxiety with leaving his house. Mr. Gabriel often does not leave his house for 3-4 (or more) days at a time." *Id*. at 578.

Dr. Fitz wrote a more comprehensive letter in July 2015, reporting that Plaintiff "has been under my care for Bipolar Disorder and Social Phobia for the past 9 years. (His illness began years earlier.) During this time he has been compliant with treatment…." *Id.* at 589. She further wrote, "In my professional opinion he is very disabled by his fear of leaving his house and cannot be reasonably … expected to reliably show up to work, stay an entire work day or refrain from excessive absence. He has shown only modest improvement from medication/therapy…." *Id*.

In April 2014, Ann Howard wrote a detailed letter describing Plaintiff's mental health impairments, symptoms, and limitations. *Id*. at 405. She recounted his "extreme anxiety," panic attacks, and social anxiety. *Id*. She described having "observed him shaking uncontrollably and sweating profusely when faced with trips outside the home…" *Id*. And she opined that Plaintiff "would be unable to work in any capacity at this time due to the severity of his symptoms." *Id*.

## III. The ALJ's Decision

Plaintiff's eligibility to receive Supplemental Security hinged on whether he was under a "disability" as defined under social security law. *See* 42 U.S.C. §§ 423(d)(1)(A)-

7

(d)(2)(A), 1381a; *see also Bowen v. City of New York*, 476 U.S. 467, 470 (1986). To determine if he was under such a disability, ALJ Anschuetz evaluated the evidence under the Social Security Administration's 5-step evaluation procedure. 20 C.F.R. §§ 416.920(a)(4). Moving through step 1, the ALJ found at steps 2 and 3 that Plaintiff's impairments—including his severe impairments of affective disorder, anxiety disorder, and obesity—did not automatically entitle him to benefits. (Doc. #6, *PageID* #s 49-52).

At step 4, the ALJ found that the most Plaintiff could do despite his impairments—his residual functional capacity, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)—was medium work, and "[d]ue to his mental health impairments, the claimant is limited to performing simple, routine, and repetitive tasks but not at a production rate. He can have occasional interaction with supervisors, coworkers, and the public." (Doc. #6, *PageID* #52). The ALJ also found at step 4 that Plaintiff did not have any past relevant work.

The ALJ Anschuetz concluded at step 5 that Plaintiff could perform a significant number of available jobs such as floor waxer and industrial cleaner. *Id*. at 1426-27. This led ALJ Anschuetz to conclude, in the end, that Plaintiff was not under a disability and not entitled to benefits. *Id*.

IV.  **Standard of Review**

The present review of ALJ McHugh's decision determines whether he applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If he failed to apply the correct legal criteria,

8

his decision may be fatally flawed even if the record contains substantial evidence supporting his findings. *Rabbers*, 582 F.3d at 651; *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). Substantial evidence supports a finding when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

## V. Discussion

Plaintiff contends that the ALJ erred in rejecting multiple opinions provided by his treating psychiatrist, Dr. Fitz, by concluding that her opinions were inconsistent with Plaintiff's treatment records without providing any citation to evidence that substantiates this conclusion. Plaintiff further contends that the ALJ mischaracterized Ann Howard's testimony as an improper means of assigning her opinions lesser weight. And, Plaintiff maintains that the ALJ erred in weighing the opinions provided by record-reviewing psychologists, Drs. Fernandez and Hoyle.

The Commissioner contends that the ALJ did not harmfully err in evaluating the medical-opinion evidence, including Dr. Fitz's opinions and Ann Howard's opinions.

Social Security law requires an ALJ to weigh a treating physician's opinion under the so-called treating physician rule. The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the

9

opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014); 20 C.F.R. § 416.927(c)(2).

If the treating physician's opinion is not controlling, the ALJ must continue to weigh his or her opinions under "a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

ALJs must provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*.

The ALJ placed "little weight" on Dr. Fritz's opinions. He wrote, "Dr. Fitz's numerous opinions are not entitled to controlling or deferential weight under the regulations, as they are not fully supported by the record…." (Doc. #6, *PageID* #57).

To the extent the ALJ was referring to the treating physician rule, the rule does not require an opinion to be fully supported by the record. Instead, it requires that an opinion be well-supported by medically acceptable clinical and laboratory diagnostic techniques.

"[I]t is not necessary that the opinion be fully supported by such evidence." Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (July 2, 1996).

The ALJ next observed that Dr. Fitz's opinions "are simply not consistent with the claimant's treatment records. To begin with, the claimant was often noted to be stable with medication." (Doc. #6, *PageID* #57). Without more explanation or citation to evidence of record, the fact that Plaintiff was often noted to be stable with medication does not provide a reasonable basis for placing little weight on Dr. Fitz's opinions. Plaintiff correctly points out that the term "stable" indicates only a lack of change over time. The term is relative to the particular circumstances in which it is used. Without some evidence or explanation of these circumstances, a person who is medically "stable" could range from a unhealthy person who is extremely limited or to a healthy person with no limitations. The ALJ read the word "stable" as closer to the latter, meaning someone more able to perform work than Dr. Fitz believed. This was not a reasonable reading of the term "stable" because the ALJ did not connect the word "stable" to the level of asperities, or lack thereof, in Plaintiff's mental health. This, in turn, was not a reasonable ground for discounting treating specialist Dr. Fitz's opinions.

The ALJ next explained, "Dr. Fitz indicated that Plaintiff was capable of preparing simple meals, performing household chores, caring for his personal hygiene, driving his car, and attending medical appointments." (Doc. #6, *PageID* #57). Yet, Dr. Fitz knew Plaintiff was able to engage in these activities at the time she (Dr. Fitz) provided her opinions. This is particularly significant regarding the impact Plaintiff's Social Phobia had on him. The ALJ erred by discounting Dr. Fitz's opinions based on the ALJ's own

disagreement—*i.e.*, his own lay opinion—with Dr. Fitz about the significance of these activities. "An ALJ 'may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.'" *Simpson v. Comm'r of Soc. Security*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Meece v. Barnhart,* 192 F. App'x 456, 465 (6th Cir.2006) and citing *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir.1996) (stating "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"); see *also Harvey v. Comm'r of Soc. Security*, No. 16-3266, 2017 WL 4216585, at *7 (6th Cir. 2017).

The ALJ also discounted Dr. Fitz's opinion because Plaintiff cared for his father until his death. This refers to the death in 2009 of the elderly man Plaintiff cared for. Without more explanation, which the ALJ does not provide, the caretaking activities is not reasonably probative of Plaintiff's work abilities at or near the time in 2013 and 2015 —when Dr. Fritz's gave her opinions—or in mid-April 2013, when Plaintiff filed his application for benefits.

The ALJ also viewed Dr. Fitz's opinions as internally inconsistent because she believed Plaintiff was unable to maintain employment yet also found him capable of remembering, understanding, and following directions; maintaining attention; and maintaining concentration, persistence, and pace. He wrote, "If the claimant suffered from the significant social anxiety he reported, it is likely that said anxiety would interfere with these functions." (Doc. #6, *PageID* #57). This is the ALJ disagreeing with Dr. Fitz over the impact Plaintiff's social anxiety has on him. The ALJ's own lay

12

medical opinion about the significance of Plaintiff's social anxiety is not a valid basis for identifying the inconsistency the ALJ relied on.  *See Simpson*, 344 F. App'x at 194; *see also Meece,* 192 F. App'x at 465; *Rohan,* 98 F.3d at 970.  The Commissioner might be heard to say in response that the ALJ was acting within his province by identifying Plaintiff's mental-work limitations.  But, that is not what the ALJ is doing.  The ALJ is instead discounting treating specialist Dr. Fitz's opinions based on his own disagreement with Dr. Fitz over the significance of Plaintiff's social anxiety.  This was not a reasonable evidence-based explanation for discounting Dr. Fitz's opinions.

Accordingly, for the reasons set forth above, substantial evidence does not support the reason the ALJ provided for discounting Dr. Fitz's opinions, and the ALJ failed to provide good reasons for placing little weight on Dr. Fitz's opinions.

\* \* \*

The ALJ also erred by mischaracterizing Ann Howard's testimony.  The ALJ rejects Howard's opinions and testimony upon the following grounds:

> **However, Ms. Howard concluded her testimony by stating that the claimant's main problem was financial.** While the claimant received treatment for a number of years, he did not consider himself to be disabled until his financial resources were depleted… Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a claimant is eligible for disability benefits…

(Doc. #6, *PageID* #58) (emphasis in original).

Contrary to the ALJ's statement, Howard did not conclude her testimony by stating or implying that Plaintiff's main problem was financial.  Rather when ALJ asked Howard about the difference it would make to Plaintiff if he were not awarded disability

13

benefits, Howard testified, "I'm not sure how he's going to be able to maintain any type of stability in the community, to be honest with you. It's just a daily struggle for him, so I just—I'm not sure how else to answer and, just—I just think—I'm not sure how he's going to be able to maintain stability in the community." *Id*. at 110-11. Further, throughout her testimony, Howard repeatedly endorsed that Plaintiff's emotional instability was his principal problem. She explained, for example, that "his mental health symptoms are such that they would prevent him from being any type of reliable worker…" *Id*. at 104-07, 110. Although Howard was not an acceptable medical source, the ALJ needed to consider her testimony and opinions under the regulatory factors applicable to acceptable medical-source opinions. *Noto v. Comm'r of Soc. Sec*., 632 F. Appx. 243, 249 (6th Cir. 2015) ("in some cases a non-acceptable medical source may have an insight as to the claimant's impairment that outweighs even a treating source's opinion depending on the nature of her treatment relationship with the claimant and the quality and supportability of her opinion." (citation omitted)). Assuming the ALJ attempted to apply the regulatory factors—he says he did (Doc. #6, *PageID* #58)—substantial evidence does not support his mischaracterization of Howard's testimony.

Substantial evidence also fails to support the ALJ's finding that Plaintiff "did not consider himself to be disabled until his financial resources were depleted." *Id*. This finding tends to indicate that the ALJ overlooked the financial eligibility requirements for an award of benefits under the program for Supplemental Security Income. *See* 20 C.F.R. §§ 416.202(c), (d). To Plaintiff's credit, moreover, he explained at the hearing that he did not apply for disability benefits until June 2013 because he received an

inheritance when his father passed away in 2009. (Doc. #6, *PageID* #s 93-94). He was correctly advised by the Department of Job and Family Services that he could not receive Supplemental Security Income until his inherited money was exhausted. *Id*. at 94. Rather than spending the money all at once to rush a Social Security application, Plaintiff instead did the right thing and made the inheritance last as long as possible, conservatively living off this money for years. *Id*. Even after he depleted the inheritance, rather than turning to Social Security for assistance, he sold his personal belongings (*e.g.,* coin and stamp collections) to pay his bills. *Id*. at 94-95. Only after all his resources were completely exhausted and he was financially eligible for the same did Plaintiff apply for Supplemental Security Income. *Id*. It was therefore unreasonable for the ALJ to rely upon the applicable financial-eligibility requirements as a basis to both discredit Plaintiff's allegations of disability and reject Howard's opinions.

Accordingly, substantial evidence does not support the ALJ's rejection of Howard's testimony and opinions.

* * *

The ALJ placed great weight on the opinions of record-reviewing psychologists Dr. Fernandez and Dr. Hoyle. Doing so, he recognized that they did not treat Plaintiff but he also observed, "they are licensed psychologists and have reviewed all of the evidence in this matter. These psychologists have extensive experience evaluating people with mental health impairments, and their findings are consistent with the objective medical evidence." (Doc. #6, *PageID* #56).

15

Two problems arise here. First, the ALJ subjected Dr. Fitz's treating-source opinions to more rigorous scrutiny than he applied to Dr. Fernandez's or Dr. Hoyle's opinions. "A more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires." *Gayheart*, 710 F.3d at 379 (citations omitted). Second, even if the first problem is ignored, many of the ALJ's reasons generally apply to all state-agency record-reviewing medical sources. As a result, if the Court were to accept these alone as valid reasons without requiring further explanation or reference to evidence, no actual weighing of record-reviewers' opinions would exist. Their opinions would be entitled to great weight regardless of the consistency or supportability of their opinions.

The ALJ provided one additional reason for crediting these psychologists' opinions but this too falls short. The ALJ said that these psychologists' "findings are consistent with the objective medical evidence." (Doc. #6, *PageID* #56). This single conclusion fails to indicate that the ALJ weighed the opinions of these record reviewers as the regulations require. Moreover, the ALJ's reference to objective medical evidence is mistaken when the issues concerned Plaintiff's mental-health problems and work limitations. *See Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (citing *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)) (other citation omitted).

Accordingly, for all the above reasons, Plaintiff's Statement of Errors is well taken.[1]

---

[1] In light of the above review and the resulting need for remand of this case, analysis of the parties' remaining

## VI. Remand for Benefits

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is warranted in the present case because the evidence

---

arguments is unwarranted.

of disability is overwhelming or strong while contrary evidence is lacking. The strong or overwhelming evidence consists of the opinions and information provided by Plaintiff's long-term treating specialist Dr. Fitz, as supported by further information and opinions of Ann Howard, who frequently observed signs and symptoms consistent with Plaintiff's Social Phobia and resulting limitations. The contrary evidence is lacking because the brief explanations provided by record-reviewing psychologists Dr. Fernandez and Dr. Hoyle (Doc. #6, PageID #s 122, 148) identify work limitations largely consistent with those Dr. Fitz identified and do not explain with any reasonable precision why they found Plaintiff not significantly limited or moderately limited in some areas.[2] Further, the abilities Drs. Fernandez and Hoyle recognize—such as Plaintiff's ability to cook simple meals, drive, shot when necessary, and handle finances—constitute minimal probative evidence concerning Plaintiff's mental residual functional capacity. And, although, in general, record-reviewers' opinions are not automatically rejected because they lacked a complete record at the time of their review, in the present case Dr. Fernandez and Dr. Hoyle lacked significant evidence concerning Plaintiff's treatment by, and opinions of, Dr. Fitz and Ann Howard. *Cf. Brooks v. Commissioner of Social Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) ("When an ALJ relies on a non-examining source who 'did not have the opportunity to review' later submitted medical evidence, especially when that evidence 'reflects ongoing treatment,' we generally require 'some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not

---

[2] The Commissioner's counsel acknowledges—to her credit—that some of the limitations set by Drs. Fernandez and Hoyle "are ostensibly more restrictive tha[n] the ALJ's RFC…." (Doc. #12, *PageID* #644).

18

based on a review of a complete case record.'" quoting, in part, *Blakley,* 581 F.3d at 409 (other citation omitted)).

The overwhelming or strong evidence also includes testimony from a vocational expert. She reports that no jobs would be available for a hypothetical person with Plaintiff's residual functional capacity plus more than one work absence per month or leaves work early or is late for work more than three times per month. (Doc. #6, *PageID* #s 117-18).

Accordingly, reversal of the ALJ's decision and remand for an award of benefits is warranted.

## IT IS THEREFORE ORDERED THAT:

1. The Commissioner's non-disability finding is reversed and the matter is remanded to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for payment of benefits based on Plaintiff's application for Supplemental Security Income protectively filed on April 15, 2013; and

2. The case be terminated on the docket of this Court.


March 9, 2018                                    *s/Sharon L. Ovington*
                                                 Sharon L. Ovington
                                                 United States Magistrate Judge